**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FRANK VAIA,                                )
                                           )
      Plaintiff,                  )
                                           )    No. 24-cv-5191
      v.                          )
                                           )    Judge April M. Perry
LARRICK WEST, Individually, and the        )
CITY OF CHICAGO, a Municipal Corporation,  )
                                           )
      Defendants.                 )

## OPINION AND ORDER

Frank Vaia ("Plaintiff") brings this case against Chicago Police Officer Larrick West ("West") and the City of Chicago ("City") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983") and Illinois state law. Specifically, Plaintiff brings against West claims for excessive force and unlawful seizure in violation of the Fourth Amendment (Counts I, II, III, and IV), battery (Counts V and VI), and intentional infliction of emotional distress (Count VIII). Doc. 45. Plaintiff brings against the City a *Monell* claim (Count IX) and requests indemnification for West's conduct (Count VII). *Id.* Before this Court are Defendants' motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 48, 49. For the reasons that follow, the City's motion to dismiss is granted in part and West's motion to dismiss is denied.

## BACKGROUND[1]

According to the complaint, on January 1, 2023, Plaintiff was walking on a Chicago street when West allegedly stepped out of the shadows in his Chicago Police Department

---

[1] The facts are drawn from allegations in Plaintiff's complaint, which the Court accepts as true, drawing all reasonable inferences in Plaintiff's favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court also considers documents that were attached to the complaint and referenced in it. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

1

("CPD") uniform, "presented himself as a police officer," and started questioning Plaintiff. Doc. 45 at 2.[2] At some point during this discussion, West told Plaintiff that West was romantically involved with Plaintiff's girlfriend. *Id.* Plaintiff asked why police were involved and questioning him, and in response, West punched Plaintiff in the face. *Id.*

Another incident between West and Plaintiff took place on April 23, 2023. Following an argument between Plaintiff and his girlfriend, Plaintiff went to his home in Berwyn, Illinois. *Id.* at 4. Plaintiff's girlfriend allegedly reached out to West "for police assistance" and told West that Plaintiff had stolen her purse. *Id.* West then went to Plaintiff's house with Plaintiff's girlfriend, wearing at least a portion of his uniform which identified him as a CPD officer. *Id.* "Plaintiff's girlfriend went up to Plaintiff's home with [West] and announced that the police had arrived at Plaintiff's house and had an arrest order." *Id.* West identified himself as a CPD officer and without any provocation kicked Plaintiff in the knee and held Plaintiff in custody until the Berwyn Police Department arrived. *Id.* at 4-5.

The April 23 incident was reported to CPD and investigated internally. Doc. 45-1 at 1. At the conclusion of the investigation, the investigator recommended that West receive a thirty-day suspension. *Id.* This recommendation was based in part upon the investigator's conclusion that West had violated CPD General Order G03-02-02, which requires a report to be written by any officer who engages in a use of force "in the performance of his or her duties." *Id.* at 4. The investigator also found West had violated General Order G04-01-III-C, which prohibits an officer from investigating or arresting those with whom the officer has a personal connection. *Id.* at 3.

---

[2] Because the second amended complaint has numerous duplicative paragraph numbers, this opinion cites to the relevant page numbers.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The law is clear that a "formulaic recitation of the elements of a cause of action will not do." *Id.*

**ANALYSIS**

**I.       Section 1983 Claims Against West (Counts I – IV)**

The only federal claims in this case are brought pursuant to Section 1983, which punishes deprivations of federal rights by those acting under color of state law. West argues that the Section 1983 claims against him fail because the complaint has not plausibly alleged that West was acting under color of law on either January 1, 2023 or April 23, 2023. For the reasons that follow, the Court disagrees.

To state a claim under Section 1983, a plaintiff must plead that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity

deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). "An action is taken under color of state law if it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (internal quotations omitted). An action is not performed under color of state law when a state employee is "off on a frolic, trying to protect a personal interest." *Id.* at 516. The determination as to whether a person is misusing their state authority or off on a personal frolic is by necessity "a rigorous fact-bound inquiry." *DiDonato v. Panatera*, 24 F.4th 1156, 1160 (7th Cir. 2022).

For the purposes of the color of law analysis it is not enough to plead that the defendant happened to be a law enforcement officer. *See Plaats v. Barthelemy*, 641 F. App'x 624, 627 (7th Cir. 2016) ("Section 1983 does not cover disputes between private citizens, even if one happens to be an officer."). The key question is whether an officer's actions related in some way to the performance of a police duty. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990); *see also Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) ("Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed"). If so, an officer may be acting under color of law even if he was not on duty at the time of the misconduct. *See Greco v. Guss*, 775 F.2d 161, 168 (7th Cir. 1985) ("This court has held that off-duty officers acted under color of state law when they identified themselves as police officers, carried their badges and guns, and were required by department regulations 'to be always subject to duty.'"); *Est. of Sims,* 506 F.3d at 516.

Here, Plaintiff has plausibly alleged that West's actions were taken under color of law on both January 1, 2023 and April 23, 2023. With respect to the January 1 incident, West

4

approached Plaintiff in his CPD uniform on a Chicago street, identified himself as a police officer, and started questioning Plaintiff. These are all indicia of a police officer performing official duties. *See Pickrel*, 45 F.3d at 1116-18 (emphasizing that a uniform and badge are both "signs of state authority," and a gun enables an officer to "enforce his authority"). Similarly, on April 23, West was wearing enough of his CPD uniform to make him recognizable as a law enforcement officer, identified himself as a law enforcement officer, allowed the person with him to announce that he was there to execute an "arrest order," and then did in fact seize Plaintiff and hold him until local police arrived. Moreover, West's April 23 actions followed an alleged crime and victim's request to West for police assistance. Finally, CPD itself concluded that West had violated General Orders that only apply to an officer who is conducting investigations, making arrests, and using force "in the performance of his … duties." Although the internal investigation findings may not rise to the level of a "judicial admission" (an issue fiercely debated by the parties), they certainly lend plausibility to Plaintiff's allegations that West was misusing power given to him by CPD.

It is true that the complaint also tells a story of a personal vendetta between Plaintiff and West, and the facts developed in discovery could certainly establish that one or both of the incidents at issue in this case do not legally meet the bar for actions taken under color of law. But at this stage of proceedings, the Court must draw all reasonable inferences in Plaintiff's favor. In so doing, the Court has no trouble concluding that color of law is plausibly alleged. As this was West's only challenge to Counts I – IV, the Court denies West's motion to dismiss the Section 1983 claims against him.

II.      **Section 1983 Claim Against the City (Count IX)**

Plaintiff also brings a Section 1983 claim against the City pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). The City challenges this claim because, among other reasons, Plaintiff has not alleged any unconstitutional pattern or practice by the City. The Court agrees.

Municipalities are "persons" who may be sued under Section 1983. *See id*. However, for a municipality to be liable under Section 1983, a complaint must plausibly allege some basis for concluding that the municipality has itself violated federal law; municipalities "cannot be held vicariously liable for the constitutional torts of their employees." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023). For a Section 1983 claim against a municipality to survive a motion to dismiss, a plaintiff must "plead facts that plausibly suggest that: (1) [he] was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." *Id.* at 524 (internal quotations omitted). Three types of municipal actions support liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*

The complaint alleges three widespread customs or practices in support of *Monell* liability: (1) the City's legal representation of off-duty police officers who are sued based upon actions they took holding themselves out as police officers; (2) the City's practice of ignoring reports of misconduct by its officers outside of City limits; and (3) the City's practice of delaying its investigation of complaints of misconduct that involve off-duty officers "to avoid possible

6

municipal liability." Doc. 45 at 8. The most significant problem with these allegations is that it is wholly implausible that any of the named policies or practices caused Plaintiff's constitutional injury. *See Estate of Novack ex. Rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) ("a municipal policy or practice must be the direct cause or moving force behind the constitutional violation" (internal quotations omitted)). First, it is patently unreasonable to conclude that providing legal representation to an accused officer is the direct cause of officer misconduct. Were this true, one would have to conclude that the Constitutional right to counsel in criminal cases is the direct cause of crime. The idea is provocative, but not persuasive. Second, the City's supposed policy and practice of ignoring reports from other municipalities when its officers misbehave in surrounding jurisdictions could not plausibly be considered the cause of Plaintiff's injuries in this case because: (1) the January 1 incident was not in an outside jurisdiction; and (2) the April 23 incident, which was in an outside jurisdiction, was investigated by the City and therefore not ignored. This leaves only Plaintiff's allegation that CPD's policy of slow-walking investigations involving off-duty conduct caused West to assault Plaintiff on two occasions. But it is not plausible that slow investigations cause misconduct. Especially if, like here, the investigations result in disciplinary sanctions. Finally, even if such a policy exists for off-duty misconduct, the complaint does not actually allege that West was off duty for either of the events in question.

In addition to the fact that Plaintiff has not plausibly alleged that the identified policies and practices caused Plaintiff's injuries, the complaint also does not allege a widespread pattern and practice of Constitutional injuries. For *Monell* liability to attach to the City, there must be facts alleged that "the specific violations complained of were not isolated incidents." *Thomas*, 74 F.4th at 524; *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has

not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."); *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985) (explaining that a plaintiff must allege "a pattern of conduct or a series of acts"). Plaintiff's theory seems to be that CPD's policies and practices encourage officers to use their public office to squash personal disputes. *See* Doc. 53 at 8 (describing how CPD's policies "embolden officers to invoke their official authority in personal disputes with the expectation of institutional protection"). For that theory to be plausible, Plaintiff would need to plead more widespread injuries than the two assaults perpetrated on Plaintiff by the same officer. *See Stewardson v. Titus*, 126 F.4th 1264, 1279 (7th Cir. 2025) (noting that a *Monell* claim normally requires "evidence that the identified practice or custom caused multiple injuries"); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 240 (7th Cir. 2021) (noting Court's repeated "rejection of *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations."); *Thomas*, 74 F.4th at 525 (finding that "two isolated incidents" could not plausibly establish a widespread practice).

For these reasons, the Court dismisses Count IX, the Section 1983 claim against the City.

**III.     Indemnification Claim Against the City (Count VII)**

The only remaining claim against the City is a request for indemnification. The City argues that this claim should be dismissed because none of West's actions were within the scope of his employment. The Court disagrees that such a finding is appropriate at this early stage.

Plaintiff's indemnification claim arises under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102. The Act requires a local public entity to indemnify an employee who commits a tort while acting within the scope of his

8

employment. For an act to be within the scope of employment it must be of the kind he is employed to perform, occur substantially within the authorized time and space limits of the job, and be actuated, at least in part, by a purpose of serving the employer. *See Pyne v. Witmer*, 543 N.E. 2d 1304, 1308 (Ill. 1989) (citing Restatement (Second) of Agency § 228 (1958)). Scope of employment is a fact-intensive question, and Illinois courts hold that it is generally inappropriate to resolve it on a motion to dismiss or even at summary judgment. *Bagent v. Blessing Care Corp.*, 862 N.E. 2d 985, 992-93 (Ill. 2007); *see also Pyne*, 543 N.E.2d at 1309 (explaining that "where the surrounding facts and circumstances leave room for legitimate inferences as to whether, despite the deviation, the employee was still engaged in the employer's business, the question is for the jury."); *Doe v. City of Chi*., 360 F.3d 667, 672 (7th Cir. 2004) (noting the Seventh Circuit has "warned repeatedly against trying to resolve indemnity before liability"). "Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting." *Bagent*, 862 N.E. 2d at 992-93.

Here, the complaint has adequately pled that West was acting within the scope of his employment on January 1, 2023 and April 23, 2023. As is discussed in more detail above, to outside observers West would have appeared to be acting in his capacity as a police officer when he engaged with Plaintiff on both dates. Moreover, CPD treated West's actions on April 23 as part of the "performance of his … duties" at least for the purposes of disciplining West. Acting under color of law is not the same inquiry as acting within the scope of employment, but there is overlap in the relevant facts and for many of the reasons stated above, the Court finds that scope of employment has been plausibly alleged. Plaintiff's biggest challenge likely will be showing that West's conduct was actuated at least in part by a purpose of serving CPD. But a complaint

9

may survive a motion to dismiss even if it appears "on the face of the pleadings that a recovery is very remote and unlikely." *Pickrel*, 45 F.3d at 1118. Prior to any discovery it is impossible for either Plaintiff or this Court to know what West's subjective motivations were. Even acts that are outright forbidden by the employer can still be found to be within the scope of employment. *Gaffney v. City of Chicago*, 706 N.E.2d 914, 923 (Ill. App. Ct. 1998) (noting that the Restatement (Second) provides that an "act, although forbidden, or done in a forbidden manner, may be within the scope of employment"). For these reasons, the Court denies the City's motion to dismiss the indemnification claim.

## IV. State Law Claims Against West (Counts V – VI, VIII)

Finally, the Court moves to Plaintiff's state law claims against West for battery (Counts V – VI) and intentional infliction of emotional distress (Count VIII). West challenges these claims solely on the basis that they are barred by the statute of limitations.

The statute of limitations is an affirmative defense which a plaintiff ordinarily need not anticipate and attempt to plead around in a complaint. That said, the Court may dismiss a case when the "factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Here, the factual allegations in the complaint do not unambiguously establish which statute of limitations is appropriately applied to this case. Under Illinois law, a one-year statute of limitations applies to tort cases in which a state employee was acting within the scope of his employment, and a two-year statute of limitations applies otherwise. *See* 745 ILCS 10/8–101; *Herriott v. Powers*, 603 N.E.2d 654, 657 (Ill. App. Ct. 1992). The complaint in this case was filed just over one year after the events in question, and therefore if West was acting within the scope of his

10

employment, his state law claims against West will likely be barred by the statute of limitations.[3] But as is discussed in more detail above, the scope of employment inquiry is fact-based, rarely appropriately decided on a motion to dismiss, and the merits of such a claim in this case are by no means clear. For all of those reasons, the Court declines to dismiss the state law claims against West now based upon the statute of limitations.

**CONCLUSION**

For the foregoing reasons, the Court grants the City's motion to dismiss only as to Count IX, and West's motion to dismiss is denied. If Plaintiff believes he can plausibly allege a *Monell* claim based upon the guidance set forth in this opinion, he may file a proposed amended complaint by April 1, 2026.

Dated: March 11, 2026

_____
APRIL M. PERRY
United States District Judge

---

[3] If it is not yet clear, one of the oddities of this case is that the parties have taken not only positions inconsistent with each other (an expected part of the adversarial process), but West and Plaintiff each take internally inconsistent positions. Plaintiff argues that West was acting within the scope of his employment for the purposes of indemnification, and yet not within the scope of employment for the purposes of the statute of limitations. For his part, West argues that he was not acting under color of law but was acting within the scope of his employment – a difficult feat to pull off. In any event, Federal Rule of Civil Procedure 8(d) explicitly countenances the pleading of inconsistent claims and defenses, and so the Court addresses the merits of each argument without getting distracted by the logical inconsistencies.

11